And we'll hear Green v. Harbach. You may proceed. Morning. You'll have to lift the microphone up. Is that better? You can actually raise the dice. To your right-hand side there, you'll see a little. Thank you, Your Honor. Good morning. Peter Vantol from Hogan Levels for the appellant, Charles Green. As Your Honors know, this is a copyright case, and the main issue on appeal is substantial similarity. And I'd like to start with the third acts of these two works because I think those are the critical ones. And for the Court's benefit in the Art of Fielding, that is from pages N434 to 505, and in Buckey's it's A264 to 285. These acts are critical because they involve the confession, confrontation, before the championship game, the game itself, and then the aftermath. That is where the greatest similarities appear, and that is where they appear in almost lockstep sequence. And I'd like to just give you those five scenes and tell you where they appear in lockstep. The first is the confession. The second is the football flashback. The third is the statue visit. The fourth is the championship game itself, and the fifth are the issues about moving of the dead body remains. At each one of those scenes, they appear at exactly the same point in each novel. The confession is at 85% through both works. The football flashback is at 88% through both works. The statue visit is at 88 and 87%. The championship game is at 88%. That's where it begins. And the moving of the remains. Every one of these things are things that happen all the time. I mean, you know, I'm a baseball fan, and I watch these things, and it seems to me that these are the things that I know that there is a concession arguendo of access. But without access, I must tell you, I could have come up with almost all of those things myself. But it's unusual, Your Honor, to have a baseball game that has these features. Coming after the confession with a football flashback in both novels involving a dead quarterback, a statute visit, and then when you go to the game itself, Your Honor, the similarities abound. They both have the same type of national anthem. Have you read our decision in Jurassic Park? You know, this case reminds me very much of that. I was a very junior judge then. Judge Oaks was presiding. And here there was a whole thing about dinosaurs and renewals, and they'd come up in some place. And there were these similar things because you're talking about the same thing, but copyright is a rather special. I mean, you have to be copying something that is protected. And that's exactly the point, Your Honor, in that in Williams' case there were general scenes that naturally flowed from the genre. And what I'm articulating for the championship game is these are not scenes that would naturally flow from the genre. In both scenes, games, the hero is gone and returns as a pinch hitter. Not at the beginning of the game, but a pinch hitter in both. It's the same count, 0-2. It's the same situation. Two outs and a ninth for the run-run first. There's a mound conference before the person's hit. There's an intentional throw. The batter doesn't try to get out of the way, and then he's hit in the head, Your Honor. None of those have to be in a book of this nature. Are any of those things even wildly protected? They are, Your Honor, because they're an idea, and this is the particularized expression of the idea. So what you were talking about earlier is the stock elements or the Santa Fe. Those are things that arise naturally. In a Western, of course, you're going to have bank robbers. You're going to have train wrecks. You're going to have things of that nature. In a baseball game, you are not necessarily going to have the hero beamed in the head on the same count in the exact same way and then have the same aftermath with the dead quarterback's remains being an issue. It's very unusual. We're not arguing that a baseball game itself is protected. What we're arguing is that Mr. Green chose to express it in a very particular way in lockstep in this third act, and that appears remarkably in the same places in the art of fielding. And if Your Honors look at the article that's at A, or at least this part of the article, A62 in the record, Mr. Gessen, who is a friend of Mr. Harbaugh's, wrote a very interesting article saying, I read the book back in 2006. It had these elements. I didn't find it compelling. He said it was like a Disney movie. He then read a transformed work later, three years later. That transformed work had all the elements that I just listed, the scenes. The earlier work did not. And Mr. Gessen posed a question at the end of the article at A87 about his own friend. He said, how did that happen? Mr. Green did the same thing. If you read the beginning of these novels, you think, I don't see the similarities. You get to the third act, and it leaps off the page. They follow one after the other after the other. Now, we have been accused of saying this is a list of random similarities. That's not random. That's lockstep. I mean, there are other similarities that we refer to in the brief as icing on the cake that add to it, such as both teams having the same record, both times being referred to as Savior or Messiah. Reading books on a bench at a baseball game, that's not normal. That's not something that arises naturally. That's a very odd thing. The setting and the premise are unique. There are no other novels where it's Division III, which is a particular type of baseball team. I don't know about reading books in baseball games. I do know that Byron White used to read books in football games and got top scores in some of his exams at the Yale Law School because he was doing that. I would never disagree with anything that Justice White did, Your Honor. But in baseball, it's key to both the novels that the hero looks at that and remarks about it repeatedly, that there is a reading of novels on the bench. And really what this case is most like is the case that was before the same judge, Judge Hellerstein, around the same time, the de Becque de l'Evre case, which is a famous Anastasia case arising out of Romanoff's supposed missing daughter. In that case, Judge Hellerstein, there were only two or three scenes that overlapped. Here I've just given you at least five scenes. Not only do they overlap, they go in the exact same sequence. That's either an incredible coincidence or it's evidence of copying, just like The At Bat, Your Honors, which has that one in 7.1 sextillion chance of appearing in two different works. I hadn't even heard of the word sextillion before this case. That's how high those odds are. It cannot arise naturally. The other point that the counsel likes to take each one of the events and disaggregate them and search for differences. In the Guiteau case, this court said, that's exactly what you're not supposed to do. You're supposed to take the protected elements, compare them, and then look at it as a total concept and feel. Holistically, exactly, Your Honor. That is stressed in Guiteau. If you're looking at differences, what you have to say is, do those differences overwhelm the similarities? Are they so pervasive that they just wipe out the similarities? Here that's not the case. We can see there are differences. Of course there are. That's what people do. They change things. But the kernel, the nugget of this book, the third act is the climax. That is exactly the same. Thank you. Thank you very much, Your Honors. Good morning, Your Honors. May it please the Court, Elizabeth McNamara for the defendant, Chad Harbark, and the author of The Art of Fielding. What the plaintiff's counsel has argued is ignoring what is probably one of the most fundamental principles of this Court in its substantial similarity analysis, and that is that the works themselves control, not the characterization, not the pleadings. And when you read these respective works, Bucky's and The Art of Fielding, back to back, it dictated the dismissal of the action below, and we submit dictates the affirmance of the action. When you read these works, they are simply not substantially similar in plot, characters, setting, or anything else. The plaintiff wants to focus on the third act and the ostensible unique quality of certain elements of his book, which he believes were duplicated in The Art of Fielding, albeit abstractly. But when you dig down into those acts and you see what actually occurred, the actual expression of those acts, you see that they are critically different. And Your Honor was absolutely correct to raise Williams v. Crichton, because that is the operative standard here. There, there was equally in a unique, arguably unique fact pattern in the plaintiff's work, the premise of the work of a dinosaur zoo on an island that was duplicated in Jurassic Park. But when the court dug into it and looked at the actual expression of the respective works, it concluded correctly that they were not similar. Here, the plaintiff focuses on two ostensible unique aspects, which may have some faint relevance to access, but has no relevance on the issue of substantial similarity, which is controlled not by a unique idea, but is controlled by the actual expression of the works. So the setting, they focus on Division III. It's the only baseball book that's been set in Division III, but ignores the actual settings. The plaintiff's work is at a school for the deaf outside of Philadelphia. Are you saying that if your client read the plaintiff's book and said, gee, that's nice, I will have my character be hit on the head on an 0 and 2 count with somebody on first base, that if he had done that, that that would not be protected? Absolutely, Your Honor. And my client absolutely denies he was aware of the plaintiff's book, never read it. Yes, of course. But if this truly is a unique event on getting beamed in the ninth inning with a 0 and 2 count, that is nothing other than an idea, and it is expressed entirely differently in the books. And let me focus on that, because it's important. The plaintiff talks about the third act. But what happens here is that the third acts are imbued with entirely different motivations and different characters. You are saying that if somebody, assuming it was still protected, that somebody, the hero, comes up on a 3 and 2 count with the bases loaded, and mighty Wesley then strikes out in that situation, that that does not take from the famous song of that, that that would not be a violation? It might have been inspired, but it's not a violation. If the expression is different in the respective works, there is no copyright infringement. You know, simple. That's the rule. If there's any principle in this circuit, that is one. And here, let's zero in for a moment on this third act that the plaintiff contends was in lockstep. In fact, they were not in lockstep. And they are imbued, as I say, with entirely different backstories and motivations of the characters that is informing every action in these respective third acts. Of course, it's a trope of underdog teams, that there's a championship game, that there is a big moment in the ninth inning, that usually the star player is at bat in the big moment. All of that is obviously common, ubiquitous tropes and not protected. But here, Bucky in the plaintiff's work arrives in the game in the ninth inning. He arrives at that time. He's greeted with applause. He's never missed a game before. The reason he has missed this game or the first eight innings of this game is because he had been exposed as a fraud. He wasn't deaf. He wasn't from Texas. He had been put on the team as a ringer. He had a confrontation with his father's teammate, learned the true story of his suicide, reconciled with his girlfriend who was upset over the fact that she had lied to him, and then he gets into the game as a pinch hit and he's at bat. And what happens there? When he steps to the plate, he is finally at peace with himself. He's his own man, the book says. Critically, he's ready to bat. He's ready to hit the ball out of the park. And on the second pitch, he does just that, but it goes foul. And then ultimately, the pitcher decides he's going to hit him. It's in revenge for a prank that he has done. He does indeed hit him, but he gets to base. But then the next hitter, through a series of complicated events that are hard to discern, gets out. And so the team loses. That is the third act of Bucky's. The third act in The Art of Feeling is dramatically different, and it's animated by strikingly different emotional states of the players. Plaintiff just ignores how these backstories are driving the drama in the third act and instead focuses on little tiny events to construct or try to construct a claim. In The Art of Fielding, Henry arrives at the beginning of the game, not in the ninth inning. He is in no position to play baseball. He's abandoned the team for the last month. He had fallen into a severe depression over the fact that he had engaged in a wild pitch that hit his teammate and roommate, Owen, and he had been starving himself. So he is, for the first eight innings of the game, he's coaching first base. He's not playing. And it's only at the bottom of the ninth, with the score 5-4, not 3-2 in Bucky's, when the news is delivered that the president of the college has died. A major story in the book is the president is involved romantically with Owen, the same teammate that he had hit. Owen is devastated by this news. Owen can't bat, so Henry has to step in. These are exceedingly different events that occur in this third act in The Art of Fielding than in Bucky's. And when Henry steps to the plate, he does so with extraordinary trepidation. He's not ready to hit the ball out of the park like Bucky. He doesn't hit the ball like Bucky does. In fact, he lets two pitches go through, pass him, and then he decides that he's going to get himself hit in order to get on base. He's smart enough to appreciate the way the pitch is going to be thrown so he can do just that. And then he does indeed get hit. He intentionally gets himself hit versus a pitcher intending him to get hit. He gets on base, and then the team wins, unlike losing. There is simply no lockstep. There's no similarity in the expression of the third acts, and that is the sole sum and total of the plaintiff's argument. I see my time is almost out. We ask the court to affirm the ruling below. It can be discerned in simply reading these two books back to back that it's readily apparent that the stories, the characters, the themes, the settings are all substantially different. And I'm happy to address any questions. Questions? Thank you. Thank you very much, Your Honor. You have two minutes. Thank you, Your Honor. Just quickly, I think Williams can be set aside because if I heard counsel correctly, we both agree. In Williams, the distinction was the scenes were not expressed in exactly the same way. In our case, they were. And a few details that weren't provided to you on that scene are the following. In both those scenes, the hitter either leans into the pitch or does not try to get out of the way. Now, why does that matter? It matters because that is a key resolution of a point, which is that the hero sacrifices himself. That is not a baseball trope. In a baseball trope, the hero does something spectacular. He hits a home run. He strikes out the batter. It's a very unusual event for someone to sacrifice themselves, so unusual that the notes, the reader notes for Art of Fielding, which I've never read before, actually refer to Henry sacrificing. Henry sacrifices. Bucky sacrifices. The other point is what they're bracketed by. They're both bracketed by the same types of events involving a dead quarterback, the reverie, then afterwards discussion about the dead body and the moving of the remains. That can't be ascribed to Santa Fe or stock elements. Those are very unusual. I want to concede to you that it is very unusual for a baseball player to sacrifice himself by getting hit. I've watched my Yankees all too many times not do that when I wish that they had. I should be careful. I'm an Orioles fan, Your Honor, so I should be careful there. But that is the key. I won't hold that against you. Thank you, Your Honor. The key is that they were this device, and I don't want to limit it to just the beaning. The whole championship game, with all the similarities we've pointed out, that device is used for the exact same purpose, with the exact same imagery, a bad call that almost leads to an ejection, the size 14 spikes. And if I may, Your Honor, I'm running out of time, but just one last thing on this 0-2 count. In Bucky's, it makes sense. As Ms. McNamara told you, in Bucky's, he had just hit a long, foul ball, so he's at an 0-2 count, and the pitcher says, I better get to the next batter. I better hit him because I want to get to the next batter. In art of fielding, it makes no sense to have an 0-2 count be the count on which the batter is hit. It doesn't flow organically, and when you're looking at whether something was copied, do you look at whether something was lifted for no legitimate purpose? And we submit that this is the case here. Thank you. Thank you very much. Very well argued by both sides. We'll reserve decision.